Should I introduce myself also on this? No, just for the record. Okay. Thank you. Now, just to get down to the, isn't the real issue in this case whether it's moot or not? That was the instructions from the court to be prepared to discuss the mootness issue and Under the standards of, or the exceptions for mootness, this would cite the EEOC versus the Federal Express Corporation under 558F3842, that there's the four exemptions to mootness. I think the first two in that decision would be applicable that there's a collateral legal consequences and also the wrongs. People have repetition yet evading review based on the challenge action is too short. The collateral legal consequences is that under 20 U.S. Code 1415 sub J there's an issue of stay put that that during any legal procedure a child will remain is then current educational placement. Judge Ezra and the underlying district court case granted stay put to level in academy. So therefore there are no monetary consequences, right? So there's therefore no monetary consequences, is that true? There's no monetary consequences. And there's no stay put order in effect now because he's somewhere else. There is a stay put order right now. He is in stay put because this this is a continuation from the district court case. So stay put applies through the pending of this. Judge Ezra ordered that the the placement would be in Five Oaks, Texas. If the case was dismissed for mootness his judgment would be the last judgment. But there was a later IEP and he was, which determined that he was to be placed back in Maui. Yes, and that Judge Ezra, after that case, he said I'm granting you stay put at Loveland. You know, Mr. Master, you have work to do. You need to go file another request for due process on this, which he thought was a Well, he thought it was very absurd that the department would be recommending Five Oaks and Baldwin High School at the same time and he expected probably that the issue would be resolved at the administrative level. I did file that was in a DOE SY09-10087, June 9th. The hearing officer actually ruled that Baldwin School is appropriate. He didn't say anything wrong with the the testimony flip-flopping from the DOE witnesses and that it's not see any issue regarding... Right now, right now. There was then an IEP saying that he should be placed in Maui. Did you file a due process request? Object to that? Was there an objection to that by the parents? I filed for a request for due process and and and did not prevail. The hearing officer ordered placement at Baldwin. That has been appealed. That has been appealed number 10-00381 S01-BMK. It's before Judge Mulway. There's a question of state put the issue, the legality of where his then current educational placement is. If this case is dismissed, Judge Ezra's ruling that his placement is at Baldwin, the state could conceivably, the DOE conceivably, cease making payments to Loveland Academy saying, you know, that state put has been terminated by the dismissal of mootness of Case 17-606. I could conceivably bring a motion in front of Judge Mulway asking for state put back at Loveland. She may not grant that. But there's no chance of anybody sending him to Texas. Is that right? Which is the only issue before us at this point. I would say I don't know because the everything the department has done was trying to get my client marks out of Loveland Academy. If the court dismisses this on mootness, if there's no determination that Loveland is an appropriate program, it is the least restrictive environment, I can take that as an issue for a motion for state put so he could stay there until the issue of Baldwin High School is resolved in front of Judge Mulway. If not, the department can say, look, under Judge Ezra's rule, state put now is that Baldwin is at 5 Oaks, so you have to send your son to 5 Oaks because we're not paying Loveland anymore. The parent would be forced to send your child to 5 Oaks or not. Right now there's no contract for it, but it is something that is very likely to happen because I think the department would know that the parent would not send the child to 5 Oaks. Loveland would not be paid. If state put is not about where the child is, I thought state put is where the child is. If the child's in Loveland, excuse me, just wait a second. My apologies. If the child is in Loveland, why isn't she entitled to stay in Loveland pending the Baldwin Hills process as well as pending this one? That is what I would argue. So if that's the only issue, presumably it could be solved by an understanding between you and the government about whether he's going to stay in Loveland pending the other case. If the government conceded that state put was at Loveland Academy pending the case at 100381, that would resolve that collateral legal issue. All right, so let's go on. We have to find out whether they will. Then you also claim capable of repetition yet of any review, but the precise issue, there's no indication that sending him back to Texas is an issue that's going to arise again. The state, if it loses this issue in Judge Mulway and Loveland Academy is again found to be the appropriate program, the state could call a meeting, which they have done repeatedly, chronically since 2001, every six months or so and make another request for a placement. They can conceivably propose that Marcus needs to go to Texas. It's a less expensive program. It would resolve the issues of his residential component and they wouldn't have to deal with Loveland anymore. You said something before about the mother family lived on Maui. Do they still live in Maui? Well, the father has died. I know that. So the mother lives on Maui and she works for Continental Airlines. She's one week in Brazil and one week on Maui. So she's only there half the time. It would be, to have the child lose state put and be forced out of Loveland would have dire consequences because the child has no place to go. She essentially would have to give him up to the state or if the state would propose that the child go back to five votes per Judge Ezra's order, that's conceivable, but that would be, I think that would be a travesty in this particular matter. How old is the child? Pardon me? How old is he now? I believe he's 16 right now, 16 or 17. He's currently at Loveland and he's in the Therapeutic Living Program. The Therapeutic Living Program, by the way, has been certified at Loveland Academy. He's receiving adequate services there. It is the LRE under 300.516.B3, which under LRE, all things being equal, if one program's fine, the other program's fine, it's whichever program's closer to the child's home. So irrespective of that five oaks is out in the middle of rural Texas built on double white trailers primarily for behavioral disoriented children and whether the appropriateness of it, it's still in Texas. You've got about a minute and a half left. Let's hear from the state and then you will have a minute and a half to respond. Okay, thank you. Good morning again, your honors. Deputy Attorney General Gerald E. Sherrill on behalf of the Department of Education. I would argue that yes, the issues in regards to this student going up to Texas are moot. I don't believe the Department of Education has any intention, even if we do prevail, of sending him up to the Texas residential facility. There have been other IEP team meetings that have determined that the student should be at his home high school, Baldwin High School. And I believe that based upon the data that they have, which is more current and up to date, their evaluations and recent observations that they have done, that their determination is correct. What about the state put issue? Pardon me? What about the state put issue as a collateral legal consequence of declaring it moot? The state put issue would be, I mean, we would request that this court affirm Judge Ezra's decision in finding that the DOE did provide the student with the least restrictive environment. So you're saying it's not moot? Pardon me? So you're saying that it's not moot? To put it directly, if we declared it moot, would the Department's position be that the state put order was lapsed and therefore that the child could be moved from Loveland? Yes. Or we wouldn't be responsible for his payment to attend Loveland. So it's not moot? I mean, how could it be moot if, in fact, there would be an on-the-ground consequence of an order approving Judge Ezra's order? I mean, you could take the position, which would make sense to me, that there would still be a state put order at Loveland in effect because of the other due process proceeding, but you're not taking that position, so it's not moot. I stand corrected. So are you taking the position or not? Well, I would take the position that state, well, it's not a moot issue, at least in regards to the Department's position would be that if the case were affirmed that there would no longer be a state put order in effect at Loveland and that despite the pendency of the other due process proceeding before Judge Mulway, you would attempt to move him now from Loveland. Well, isn't there a way to get a state put order in the case that's still pending instead of the there's this other case still pending, right? Yes, there is. Why can't the student get a state put order in that case? Why doesn't state put apply in that case until that case is resolved? I believe because state put is from this matter that's before you right now. So in other words, your position would be that the state put order would then be to the Texas? No. Well, I would say because his IEP teams have made more recent determinations that the state put would be at Baldwin High School. You see, it seems to me a state put is like a temporary restraining order that's in effect until the case ends. Yes. And just because they well, you know, if you if you dismiss the case, the TRO is going to expire. That doesn't keep the case alive. So and, you know, or like a state pending appeal. Well, you know, we're going to firm on appeal, but we're going to keep the stay in effect. We can't do that because there's very limited circumstances. It seems to me the place to get the state put order is the case that's still alive or the recent recent appeal. Can I ask a question? Have you guys done any mediation through our court? And would there be any point in trying to get? Would you agree if we were to suggest it to talk? We have an excellent mediation office. This issue has been dragging on or these issues, related issues, but complicated issues have been dragging on for many, many years. They're complicated, but the state be willing to see at least on an initial basis, one of our mediators to see whether there's some way to come up with a sensible solution to all this. I believe that they would be, yes. Have you mediated before with our mediators? Um, I attempted. With respect to these parties, I mean, not in your life? No, I haven't. Okay. Thank you. Thank you. Response? We got about a minute and a half. Do you have a response? When you stand up, will you give us a response to the mediation suggestion? The response to the mediation issue? Yes. Yes. Mediation was ordered in this matter. Was what? I'm sorry? Mediation was what? Ordered, I think, in this matter. When? Where? By whom? The Ninth Circuit mediation. It is, you know, they say like, here's the mediator. We call up, we have a mediation to try to resolve this issue. And you write reports whether mediation is fine. I guess, well, maybe it was a proposal to see if mediation was possible. That was it. And? And it was determined that mediation was not possible. The department... Determined by whom? By the mediator. That was the point. Did you object to mediation? I did not object to mediation. And did the state object to mediation? Yes. Well, their position was so entrenched that it was clear that there was nothing to mediate about. Their position was that they weren't going to move left or right on the issue. So it was on something like this, which involves placement at Littleton Academy, which is very expensive. And so they want him out of there. And that, you know, it's either he's in or he's out. And so there's no way to be halfway there or not. So there was nothing really to compromise on the issue. In terms of whether the case is moved, I gather you'd be in the same position if the case were moved or if the case were affirmed. You'd still have no longer a state put order in that case and you'd have to deal with it in the other case. Exactly. If the case, if you affirm Judge this matter would be terminated unless I did a writ of certiorari that was accepted into the Supreme Court, which would be very unlikely. So, yeah, we would have to be right back to the beginning. We could do a motion first. We do do a motion to stay put in front of Judge Motley and try to have her determine which is the then current placement, which again, as indicated by the deputy, their position is pretty much they want him out of Loveland and their position is that the state put will be terminated by the cessation of these proceedings. Have you tried to get it? Have you applied for a state put? I have not tried with Judge Motley on this issue yet. That is something I anticipated that Judge Ezra's decision would be overturned. Maybe I'm should be, but if not, then I will have to go in front of Judge Motley. You never actually told us why it should be overturned. The problem is that on the record as existed at that point, I understand that you dispute a lot of what's in the record, but on the record, why would we not affirm Judge Ezra's order? On the record that existed at the time of the due process hearing and the circumstances that existed at the time of the IEP, why would we not affirm Judge Ezra's order? I understand they switched gears later. Well, because of the circumstances and issues of my brief that the evidence at the hearing was clear that the decision of hearing officer was procured by incomplete information or misleading information that the department had no intent of ever placing him at Baldwin and did not disclose that to the hearing officer. But that didn't deal with the issue with the relevant information. I mean, Judge Ezra wasn't sensed on the one hand, but on the other hand, he realized in the end that it didn't have to do with the information on the ground at the time of the IEP. Yeah, and he did. He quoted the Adams case, which based on the affirming decision of the circuit that the IEP is a snapshot of what is objectively reasonable at the time of the IEP. This was made by the same IEP team members that gave the incomplete and inadequate information at the testimony at the hearing. Also the... You're over time if you want to sum up very quickly. The Adams is inapplicable because the IEP team members did not make any determination on objective information. They had subjective feelings about the lack of information that was provided. There was no objective information. Even under the Union School v. Smith decision, the lack of information is not the fault of the parent. And so Judge Ezra's application of that case is inapplicable. Okay, thank you. 09-17606, now submitted for decision.
judges: Tashima, Fletcher W. , Berzon